**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

SAMUEL DE DIOS,

               Plaintiff,

vs.

INDEMNITY INSURANCE COMPANY
OF NORTH AMERICA and
BROADSPIRE SERVICES, INC.,

          Defendants.

No. C 18-4015-MWB

**OPINION AND ORDER
REGARDING DEFENDANT
BROADSPIRE'S MOTION TO
DISMISS AND REGARDING
CERTIFICATION OF QUESTIONS
TO THE IOWA SUPREME COURT**

_____

**TABLE OF CONTENTS**

I.    **INTRODUCTION**................................................................2
    A.    *Factual Background* ...............................................2
            1.    *The parties*.....................................................2
            2.    *The accident and aftermath* ..............................4
            3.    *Denial of the claim*........................................5
    B.    *Procedural Background* ...........................................6
    C.    *Arguments Of The Parties* ........................................8

II.    **LEGAL ANALYSIS** .......................................................10
    A.    *Standards For Stating A Claim* ...............................10
    B.    *Application Of The Standards*................................13
            1.    *Plausible factual allegations* ...........................13
            2.    *Legal cognizability of the claim* ......................15
    C.    *Certification Of The Question*................................16
            1.    *Standards for certification*...............................16
            2.    *Application of the standards* ...........................18
            3.    *Formulation of the question*...........................19

III.    **CONCLUSION**.............................................................20

A plaintiff who alleges that he suffered an injury in a vehicle collision on a construction site in the course of his employment brought this lawsuit against his employer's workers' compensation insurer and the third-party claims administrator it had hired to investigate, handle, manage, administer, and pay workers' compensation claims. The plaintiff alleges bad faith denial of workers' compensation benefits by both the insurer and the third-party claims administrator and vicarious liability of the insurer for the third-party claims administrator's bad faith denial of benefits. The third-party claims administrator has moved to dismiss the plaintiff's claim against it on the ground that a bad faith claim will not lie against it under Iowa law, because it does not have an insurer-insured relationship with the plaintiff. Because I conclude that this case presents a novel question of state law best answered by the Iowa Supreme Court, I conclude *sua sponte* that I should certify that question.

## I.      INTRODUCTION
### A.      *Factual Background*

#### 1.      *The parties*

Because this case is before me on a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, this statement of the factual background is necessarily drawn from plaintiff Samuel De Dios's controlling pleading, his March 20, 2018, Amended Complaint, and should not be construed as findings of fact.[1] De Dios alleges that, at all material times, he has been a resident of Woodbury County, Iowa, and that he was employed by Brand Energy & Infrastructure Services. He alleges that Brand

---

[1] I will not make an exhaustive recital of *all* of De Dios's allegations. Rather, I will focus on those pertinent to the question of whether or not De Dios's bad faith claim will lie against the third-party claims administrator.

had a workers' compensation insurance policy with defendant Indemnity Insurance Company of North America, but that Indemnity "delegated its authority of investigating, handling, managing, administering, and paying benefits under Iowa Workers' Compensation Laws to [defendant] Broadspire Services, Incorporated." Amended Complaint, ¶ 4.

More specifically, De Dios alleges the following about Broadspire's duties and its relationship with Indemnity:

> 5. At all times material to the Petition, the INSURANCE COMPANY and BROADSPIRE were responsible for making timely payment of workers' compensation benefits to employees of the EMPLOYER, including SAMUEL. Plaintiff will refer to both the INSURANCE COMPANY and BROADSPIRE collectively as "the Defendants."

> 6. BROADSPIRE and the INSURANCE COMPANY are essentially one and the same entity for purposes of the instant action.

> 7. The INSURANCE COMPANY lacked the necessary support staff to investigate on-the-job injuries in Iowa, including SAMUEL's on-the-job injury.

> 8. The INSURANCE COMPANY lacked the necessary support staff that had the experience or knowledge to make an informed decision on whether to pay benefits pursuant to Iowa Workers' Compensation Laws.

> 9. The INSURANCE COMPANY obligated BROADSPIRE to provide actuarial services for workers' compensation claims, including SAMUEL's workers' compensation claim.

> 10. The INSURANCE COMPANY obligated BROADSPIRE to provide underwriting services for workers'

compensation claims, including SAMUEL's workers' compensation claim.

11. BROADSPIRE performed the tasks of a workers' compensation insurance company in Iowa.

12. BROADSPIRE received a percentage of the premiums that the EMPLOYER paid to the INSURANCE COMPANY.

13. BROADSPIRE's compensation package with the INSURANCE COMPANY was tied to the approval or denial of workers' compensation claims: BROADSPIRE received more of the EMPLOYER's premium as the payment of workers' compensation benefits decreased.

14. BROADSPIRE had a financial risk of loss for workers' compensation claims it administered on behalf of the INSURANCE COMPANY, including SAMUEL's workers' compensation claim.

15. The INSURANCE COMPANY had a financial risk of loss for workers' compensation claims that were administered by BROADSPIRE, including SAMUEL's workers' compensation claim.

16. The INSURANCE COMPANY entered into a reinsurance agreement with BROADSPIRE for payments made on behalf of workers' compensation claims, including SAMUEL's workers' compensation claim.

Amended Complaint at ¶¶ 5-16.

## 2. *The accident and aftermath*

De Dios alleges that, on April 8, 2016, he was assigned by Brand to work on a construction site located on the private property of CF Industries. To enter the property, he had to drive past a security gate and a security guard. He alleges that, after entering the property, a vehicle driven by Jonathan Elizondo crashed into the back of his vehicle, damaging his vehicle and causing him injuries, including a lower back injury. The

collision was witnessed by the security guard at the gate, Tina Gregg. De Dios reported the collision and his work injury to Brand's safety manager, Ismael Barba. He alleges that Brand authorized him to choose whatever medical provider he would like to provide care for the work injury. De Dios chose to be treated at St. Luke's Hospital, where Dr. Jeffrey O'Tool provided him with medical care for his work injury.

On April 11, 2016, De Dios returned to work with Brand, but his back pain worsened. On April 14, 2016, Brand sent De Dios home because of his work injury. On April 14, 2016, Brand authorized De Dios to choose whatever medical provider he would like to see to care for his work injury. On April 15, 2016, De Dios's family doctor, Alisa M. Olson, DO, treated De Dios for the work injury. De Dios alleges that, from April 8, 2016, through May 9, 2016, Brand refused to provide him with "light duty" work. He alleges that, from April 15, 2016, Indemnity and Broadspire knew or should have known that he had work restrictions as a result of his work injury; that Brand refused to provide "light duty work" within those restrictions; and that Indemnity and Broadspire were required to pay him Temporary Total Disability ("TTD") Benefits and/or Healing Period ("HP") Benefits until a determination of maximum medical improvement was made by a qualified medical expert.

### 3. Denial of the claim

De Dios alleges that Broadspire or, in the alternative, Indemnity made the decision to deny him workers' compensation benefits. He alleges that, prior to doing so, neither Indemnity nor Broadspire interviewed him, or interviewed or contacted the security guard, Tina Gregg, who had witnessed the accident, or his treating physicians, Dr. O'Tool and Dr. Olson. He alleges that the defendants' failure to contact these people violated an insurance industry standard of "Three-Point Contact" before denying him workers' compensation benefits. On June 9, 2016, De Dios filed a workers' compensation claim with the Iowa Workers' Compensation Commissioner against

Indemnity and Broadspire.  On August 23, 2016, Indemnity and Broadspire filed a joint Answer with the Iowa Workers' Compensation Commissioner and denied liability for De Dios's work injury.  De Dios alleges that Indemnity and Broadspire did not convey to him the basis for their decision to deny his claim at that time, that they, in fact, had no reasonable basis for denying his claim, and that they knew or should have known that no reasonable basis existed to deny his claim.

### B.    Procedural Background

De Dios filed his original Petition At Law against Indemnity and Broadspire in the Iowa District Court for Woodbury County on January 4, 2018.  The defendants removed this action to this federal court, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, on February 21, 2018.  On February 27, 2018, Indemnity filed its Answer, denying De Dios's claims and denying knowledge sufficient to admit or deny most of his allegations. Indemnity did admit, however, that Broadspire was a third-party claims administrator that administered Brand's workers' compensation claims on behalf of Indemnity within the $1,000,000 self-insured retention limit of Brand's workers' compensation policy, but that Brand did not have an obligation to notify Indemnity of any potential workers' compensation claims with exposure below $500,000.  On February 28, 2018, Broadspire filed is first Motion To Dismiss For Failure To State A Claim, on the ground that there was no insurer-insured relationship between Broadspire and De Dios nor was there any privity between Broadspire and De Dios, so that De Dios has no cognizable claim for bad faith against it under Iowa law.  Indeed, Broadspire contended that Iowa courts have drawn a bright line limiting bad faith claims to ones against insurers and/or self-insured employers.

On March 14, 2018, De Dios filed a Motion To Enlarge Time To File Resistance To Defendant Broadspire's Motion To Dismiss in which he stated, inter alia, that he

intended to file an amended complaint as a matter of course pursuant to Rule 15(a)(1)(B), which would address the grounds alleged for dismissal. On March 16, 2018, the defendants filed a statement that they did not resist De Dios's "Motion To Amend Complaint," although no such motion had actually been filed. On March 20, 2018, De Dios filed his Amended Complaint, as a matter of course. That same day, he also filed his Resistance to Broadspire's original Motion To Dismiss, in which he argued that I need not address that motion, because Broadspire is not truly a "third party," but "one and the same entity" as Indemnity, as alleged in his Amended Complaint. On March 26, 2018, the parties jointly stipulated that Broadspire's original Motion To Dismiss was mooted by the filing of De Dios's Amended Complaint. On April 3, 2018, pursuant to that stipulation, I denied Broadspire's original Motion To Dismiss as moot, without prejudice to any of the defendants' claims or defenses in this action.

In his Amended Complaint, De Dios asserts the following claims: In Count I, a claim of "bad faith" against Indemnity; in Count II, a claim of "bad faith" against Broadspire; and in Count III, a claim of "vicarious liability" of Indemnity for the actions of Broadspire. De Dios alleges that, because of Indemnity's actions in denying his claim, he has sustained harms and losses, including past and future medical expenses; past and future pain and suffering, including mental anguish; past and future loss of full body; past lost wages and loss of future earning capacity; consequential damages and other pecuniary losses; and loss of property. He also alleges that Indemnity's actions and conduct were willful and wanton, so as to entitle him to punitive damages.

On April 3, 2018, Indemnity filed its Answer to De Dios's Amended Complaint, denying his claims and responding to his factual allegations in essentially the same way as in its Answer to his original Petition. On April 3, 2018, Broadspire filed its Motion To Dismiss Plaintiff's Amended And Substituted Complaint For Failure To State A Claim, which brought this matter before me, arguing that De Dios's claim will not lie

against it, notwithstanding De Dios's new allegations, because its role was limited to that of a third-party claims administrator. De Dios filed his Resistance on April 14, 2018, and Broadspire filed its Reply on April 19, 2018.

### C.    Arguments Of The Parties

In support of its Motion To Dismiss, Broadspire argues that De Dios's allegation that Broadspire and Indemnity "are essentially one and the same entity" is erroneous. Broadspire argues that its role with respect to De Dios's claim was that of a third-party claims administrator, that it is not De Dios's insurer, and that it has no relationship with Indemnity other than acting as a third-party claims administrator. Broadspire also points out that it is not an insurer or a self-insured employer. Broadspire argues that Iowa courts have established clear precedent that bad faith claims do not extend to third-party claims administrators and that the tort of bad faith for failing to provide workers' compensation benefits cannot be imposed absent an insurer-insured relationship.

Broadspire argues that the issue of bad faith liability against third-party claims administrators was addressed directly, and rejected, in *Raymie v. Ins. Co.*, Case No. 4:09-cv-00222-JAJ, 2009 WL 8621559 (S.D. Iowa Sept. 29, 2009). Broadspire argues that the court in *Raymie* analyzed the two considerations established in Iowa cases for bad faith claims: (1) whether the plaintiff had alleged any contractual relationship with the third-party claims administrators and whether the third-party claims administrators had issued an insurance policy to the plaintiff; and (2) whether, even without recourse against the third-party claims administrators, the plaintiff could still seek remedies against the insurer and be adequately compensated if liability was warranted. Broadspire argues that the court concluded that both considerations warranted dismissal of the bad faith claims against the third-party claims administrators.

Here, Broadspire argues, De Dios does not allege that he is in privity with Broadspire or that Broadspire has issued any insurance policy which would cover his workers' compensation claim. Instead, Broadspire argues that De Dios's allegation that Broadspire and Indemnity are "essentially one and the same entity" is illogical, because Iowa courts have established a clear distinction between insurers, which issue policies, and third-party claims administrators, which manage claims under those policies. Broadspire contends that Iowa courts have made clear that they do not view third-party claims administrators as the alter egos of insurers.

In short, Broadspire argues that De Dios's bad faith claim lacks the critical and mandatory element of an insurer-insured relationship. Even so, Broadspire points out, De Dios is not without a remedy, because he can still seek relief against Indemnity.

In response, De Dios argues that I need not address the legal issue of whether a third-party claims administrator may be held directly liable for a bad faith denial or delay of insurance benefits, which he alleges is one of first impression, because Broadspire was not truly a third party, but one and the same entity as Indemnity. He argues that, because he has asserted factual allegations that establish a plausible claim of bad faith against Broadspire, who acted like an insurer when it denied him insurance benefits, Broadspire's Motion To Dismiss should be denied.

De Dios also argues that the unpublished decision in *Raymie* is distinguishable and was entered without the benefit of the Iowa Supreme Court addressing the issue of first impression. He argues that he may not have other remedies, if he is unable to sue the purported third-party claims administrator, because Indemnity has asserted in its Answer, among other things, an affirmative defense that he has failed to state a claim upon which relief can be granted, and he also contends that Brand may have been "self-insured." He also points out that the third-party claims administrators in *Raymie* only investigated and handled the plaintiff's workers' compensation claim, but he has alleged that Broadspire

acted like an insurer and was essentially one and the same as Indemnity for purposes of his claim. De Dios also points out that other jurisdictions have recognized bad faith claims against third-party claims administrators and that, under the standards applied in those jurisdictions, his claim against Broadspire would lie.

In reply, Broadspire argues that De Dios's Resistance fails to refute the authority from state and federal courts in Iowa holding that bad faith claims cannot be imposed absent an insurer-insured relationship and, specifically, are not recognized against third-party claims administrators. Instead, Broadspire argues that De Dios has relied on the conclusory and unfounded allegation that Broadspire "was essentially one and the same" as Indemnity and has cited merely persuasive, not binding, authority allowing bad faith claims against third-party claims administrators. Broadspire argues that *Raymie* recognized that third-party claims administrators are not the substantial equivalent of or one and the same as insurers. Broadspire reiterates that De Dios still has recourse against Indemnity for Broadspire's actions. Indeed, Broadspire points out that Indemnity has admitted that Broadspire was acting as its agent. Broadspire argues that the reality is that De Dios is simply unwilling to accept that Iowa does not recognize bad faith claims against third-party claims administrators.

## II. LEGAL ANALYSIS

### A. Standards For Stating A Claim

Broadspire's Motion To Dismiss is pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. That rule authorizes a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). As the Eighth Circuit Court of Appeals has explained,

> We review *de novo* the district court's grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor

of the nonmoving party. *See Palmer v. Ill. Farmers Ins. Co.*,
666 F.3d 1081, 1083 (8th Cir. 2012); *see also* Fed.R.Civ.P.
12(b)(6). "To survive a motion to dismiss, a complaint must
contain sufficient factual matter, accepted as true, to state a
claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,
556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)
(internal quotation omitted). "A claim has facial plausibility
when the plaintiff pleads factual content that allows the court
to draw the reasonable inference that the defendant is liable
for the misconduct alleged." *Id.*

*Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012); *accord Freitas
v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013) (quoting *Richter*,
686 F.3d at 850); *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (stating
the same standards).

Courts consider "plausibility" under this *Twom-bal* standard[2] by "'draw[ing] on
[their own] judicial experience and common sense.'" *Whitney*, 700 F.3d at 1128 (quoting
*Iqbal*, 556 U.S. at 679). Also, courts must "'review the plausibility of the plaintiff's
claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek
Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). The Eighth
Circuit Court of Appeals has refused, at the pleading stage, "to incorporate some general
and formal level of evidentiary proof into the 'plausibility' requirement of *Iqbal* and
*Twombly*." *Id.* Nevertheless, the question "is not whether [the pleader] might at some
later stage be able to prove [facts alleged]; the question is whether [it] has adequately

---

[2] The "*Twom-bal*" standard is my nickname for the "plausibility" pleading
standard established in the United States Supreme Court's twin decisions on pleading
requirements, and standards for dismissal for failure to state a claim upon which relief
can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for
claims in federal court. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct.
1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173
L.Ed.2d 868 (2009).

asserted facts (as contrasted with naked legal conclusions) to support [its] claims." *Id.* at 1129. Thus,

> [w]hile this court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party," *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000), "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *[Bell Atl. Corp. v.] Twombly*, 550 U.S. [544,] 555, 127 S.Ct. 1955 [(2007)]).

*Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012); *accord Whitney*, 700 F.3d at 1128 (stating the same standards).

Various federal Circuit Courts of Appeals have expressly recognized that, in addition to dismissal for factual implausibility, the *Twom-bal* standard still permits dismissal pursuant to Rule 12(b)(6) of a claim that lacks a cognizable legal theory. *See, e.g., Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013) (a claim may be dismissed if it is based on an "indisputably meritless legal theory"); *Commonwealth Property Advocates, L.L.C. v. Mortgage Electronic Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011) ("Dismissal is appropriate if the law simply affords no relief."); *see also Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) (recognizing that a claim must plead sufficient facts under a "viable legal theory"). The Eighth Circuit Court of Appeals has suggested the same. *See Brown v. Mortgage Electronic Registration Sys., Inc.*, 738 F.3d 926, 933 n.7, 934 (8th Cir. 2013) (noting the appellate court's agreement "with the district court's sound reasoning that the facts pled do not state a cognizable claim under Arkansas law" and holding that dismissal pursuant to Rule 12(b)(6) was appropriate,

because Arkansas law did not impose the purported duty on which an unjust enrichment claim and a state statutory claim were based).

## B.    *Application Of The Standards*

### 1.    *Plausible factual allegations*

Broadspire disputes that it is, or that De Dios has alleged that it is, anything other than a third-party claims administrator for Indemnity.  Broadspire argues that De Dios's allegation that Broadspire and Indemnity are "essentially one and the same entity" is "illogical," because Iowa courts have established a clear distinction between insurers, which issue policies, and third-party claims administrators, which manage claims under those policies.  Thus, I conclude that the first question is whether De Dios has plausibly alleged that Broadspire is anything other than a third-party claims administrator.  *See Richter*, 686 F.3d at 850 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (Internal quotation marks and citation omitted)).

Broadspire is correct that, in *Raymie*, Judge Jarvey concluded that "third-party claims administrators" who "were responsible for the investigation and administration of [the plaintiff's] worker's compensation claim" were not liable for bad faith.  2009 WL 8621559 at *2.  He did not, however, hold that third-party claims administrators can *never* be liable for bad faith, nor has Broadspire cited any decision of an Iowa state court expressly so holding.  *Bremer v. Wallace*, 728 N.W.2d 803, 806 (Iowa 2007), on which Broadspire also relies, is not such a decision, because the liability of a third-party claims administrator was not even at issue; rather, the court addressed the question of whether Iowa recognizes a common-law claim for bad-faith refusal to pay workers' compensation benefits by an uninsured employer.  728 N.W.2d at 804.

Here, De Dios has alleged that "BROADSPIRE and the INSURANCE COMPANY are essentially one and the same entity for purposes of the instant action," Amended Complaint at ¶ 6, *and* he has alleged that Broadspire was responsible for much more than "investigation and administration" of his workers' compensation claim. Specifically, De Dios has alleged that Indemnity "delegated its authority of investigating, handling, managing, administering, and paying benefits under Iowa Workers' Compensation Laws to Broadspire Services, Incorporated," and "performed the tasks of a workers' compensation insurance company in Iowa." Amended Complaint, ¶¶ 4, 11. As the alleged factual basis for these contentions, De Dios has alleged that Indemnity "lacked the necessary support staff to investigate on-the-job injuries in Iowa"; "lacked the necessary support staff that had the experience or knowledge to make an informed decision on whether to pay benefits pursuant to Iowa Workers' Compensation Laws"; "obligated BROADSPIRE to provide actuarial services for workers' compensation claims"; "obligated BROADSPIRE to provide underwriting services for workers' compensation claims"; and "entered into a reinsurance agreement with BROADSPIRE for payments made on behalf of workers' compensation claims." Amended Complaint at ¶¶ 7-10, 16. He has also alleged that Broadspire "received a percentage of the premiums that the EMPLOYER paid to the INSURANCE COMPANY"; that its "compensation package with the INSURANCE COMPANY was tied to the approval or denial of workers' compensation claims," that is, that it "received more of the EMPLOYER's premium as the payment of workers' compensation benefits decreased"; and "had a financial risk of loss for workers' compensation claims it administered on behalf of the INSURANCE COMPANY." Amended Complaint at ¶¶ 12-14.

These allegations provide a plausible factual basis that Broadspire and Indemnity were "one and the same" for purposes of workers' compensation claims, such as De Dios's. *Whitney*, 700 F.3d at 1128 (explaining that the question is whether the plaintiff

has adequately asserted facts (as contrasted with naked legal conclusions) to support its claim).

### 2.    *Legal cognizability of the claim*

Even if the plaintiff has pleaded a plausible factual basis for a claim, to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must also establish that the claim is legally cognizable.  *See Brown*, 738 F.3d at 933 n.7, 934.  Broadspire argues that De Dios's bad faith claim against it is not legally cognizable, because *Raymie* recognized that third-party claims administrators are not the substantial equivalent of or one and the same as insurers.  Again, Broadspire overstates Judge Jarvey's conclusion on the issue in *Raymie*.

In *Raymie*, Judge Jarvey noted,

> [In *Bremer*,] [t]he court discussed the reasons for extending the tort of bad-faith liability to workers' compensation cases and self-insured employers in *Boylan [v. American Motorists Insurance Co.,* 489 N.W.2d 742 (Iowa 1992]), and *Reedy [v. White Consolidated Industries, Inc.,* 503 N.W.2d 601 (Iowa 1993)], saying the "common thread in these decisions is the defendant's status as an insurer, or in the case of a self-insured employer, the substantial equivalent of an insurer." *Bremer,* 728 N.W.2d at 805. The court found that an uninsured employer is not the substantial equivalent of an insurer, and thus declined to extend the tort of bad faith to this type of defendant. *Id*. at 806. The question here is whether third-party claims administrators who are responsible for the investigation and administration of workers' compensation claims on behalf of insurance carriers are the "substantial equivalent" of an insurer for the purposes of the tort of bad faith. Plaintiff cites the court to no Iowa case holding that they are.

*Raymie*, 2009 WL 8621559, at *2.  Thus, Judge Jarvey's denial of a bad faith claim against third-party claims administrators, on the ground that the third-party claims administrators were not the "substantial equivalent" of the insurer, was subject to two

caveats: (1) the third-party claims administrators in question were, again, identified as responsible only for "the investigation and administration" of workers' compensation claims; and (2) the plaintiff failed to cite any Iowa cases holding that third-party claims administrators are the "substantial equivalent" of insurers. Again, De Dios has adequately alleged that Broadspire did much more than investigate and administer workers' compensation claims for Indemnity, and the question of whether any third-party claims administrator, generally, and a third-party claims administrator with the duties and relationship to the insurer he alleges, specifically, is the "substantial equivalent" of the insurer remains an unresolved question under Iowa law.

In short, there is an unresolved question of the legal cognizability of De Dios's claim against Broadspire: In what circumstances, if any, concerning a third-party claims administrator's duties and relationship with a workers' compensation insurer, can an injured employee hold the third-party claims administrator liable for the tort of bad faith?

## C.     Certification Of The Question

Because this novel question of Iowa law is unresolved, I consider, *sua sponte*, whether it should be certified to the Iowa Supreme Court. I begin with the standards for certification of questions to the highest state court.

### 1.     Standards for certification

Certification of questions by this federal court to the Iowa Supreme Court is authorized by IOWA CODE § 684A.1 and N.D. IA. L.R. 83. I have previously explained, in a case in which I likewise certified questions *sua sponte*, the reasons that a district court has the discretion to certify questions to a state's highest court:

> As the United States Supreme Court has recognized, Certification procedure … allows a federal court faced with a novel state-law question to put the question directly to the State's highest court, reducing the delay, cutting the cost, and

increasing the assurance of gaining an authoritative response. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 76, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997); *see Lehman Bros. v. Schein*, 416 U.S. 386, 391, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974) (by certifying a question of state law, the federal court may save "time, energy and resources and hel[p] build a cooperative judicial federalism"). Thus, "[t]aking advantage of certification made available by a State may 'greatly simplif[y]' an ultimate adjudication in federal court." *Arizonans for Official English*, 520 U.S. at 76, 117 S.Ct. 1055 (citing *Bellotti v. Baird*, 428 U.S. 132, 151, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976)). Whether a federal district court should certify a question of state law to the state's highest court is a matter committed to the district court's discretion. *Schein*, 416 U.S. at 391, 94 S.Ct. 1741 ("[Certification's] use in a given case rests in the sound discretion of the federal court."); *Babinski v. American Family Ins. Group*, 569 F.3d 349, 353 (8th Cir.2009) ("'Whether a federal court should certify a question to a state court is a matter of discretion.'" (quoting *Johnson v. John Deere Co.*, 935 F.2d 151, 153 (8th Cir.1991)).

*Roth v. The Evangelical Lutheran Good Samaritan Soc'y*, 147 F. Supp. 3d 806, 813 (N.D. Iowa 2015). As the Eighth Circuit Court of Appeals has cautioned, however, "'[A]bsent a close question of state law or a lack of state guidance, a federal court should determine all the issues before it.'" *County of Ramsey v. MERSCORP Holdings, Inc.*, 776 F.3d 947, 951 (8th Cir. 2014) (quoting *Anderson v. Hess Corp.*, 649 F.3d 891, 895 (8th Cir. 2011)).

I have also set forth the pertinent factors in deciding whether or not to certify questions in *Hagen v. Siouxland Obstetrics & Gynecology, P.C.*, 964 F. Supp. 2d 951, 961 (N.D. Iowa 2013), and *Leiberkneckt v. Bridgestone/Firestone, Inc.*, 980 F. Supp. 300, 310 (N.D. Iowa 1997). *See Roth*, 147 F. Supp. 3d at 814 (citing *Hagen*, which in turn cites *Leiberkneckt*). Those factors are the following: 1) the extent to which the legal

issue under consideration has been left unsettled by the state courts; (2) the availability of legal resources which would aid the court in coming to a conclusion on the legal issue; (3) the court's familiarity with the pertinent state law; (4) the time demands on the court's docket and the docket of the state supreme court; (5) the frequency that the legal issue in question is likely to recur; and (6) the age of the current litigation and the possible prejudice to the litigants which may result from certification. *Hagen*, 964 F. Supp. 2d at 961 (quoting *Leiberkneckt*, 980 F. Supp. at 310).

### 2. *Application of the standards*

Here, I find that the question identified at the end of section II.B.2., page 16, above, involves matters of Iowa workers' compensation and tort law best answered, in the first instance, by the Iowa Supreme Court. As explained, above, that question has been left unsettled by the state courts. *Leiberkneckt*, 980 F. Supp. at 310 (relevant factors). This court may have the same legal resources available as the state courts, substantial familiarity with the pertinent Iowa law, and no greater demand on its docket than the Iowa Supreme Court, *see id.*, but only the Iowa Supreme Court can provide an authoritative answer to the question. *Arizonans for Official English*, 520 U.S. at 76 (explaining that certification of questions "increase[es] the assurance of gaining an authoritative response"). While the question at issue is one of first impression, it is a question that is likely to recur, because of the prevalence of workers' compensation claims. *Leiberkneckt*, 980 F. Supp. at 310. Finally, because this case is still at the pleading stage, the resources of the parties are likely to be saved by obtaining an early answer, and I don't believe that the parties will suffer any prejudice from certification, which will provide a definitive answer, thus greatly simplifying this litigation. *See Arizonans for Official English*, 520 U.S. at 76 (explaining that certification may also "reduc[e] the delay [and] cut[ ] the cost" to the parties and "may 'greatly simplif[y]' an

ultimate adjudication in federal court."). Therefore, I will certify the question raised in this case, in some form, to the Iowa Supreme Court.

### 3.  *Formulation of the question*

I have *tentatively* formulated the question to be certified to the Iowa Supreme Court as follows:  In what circumstances, if any, concerning a third-party claims administrator's duties and relationship with a workers' compensation insurer, can an injured employee hold the third-party claims administrator liable for the tort of bad faith for failure to pay workers' compensation benefits?  I recognize that there may be several subsidiary questions, some of which have been directly posed by the parties' arguments.  Those subsidiary questions include, but are not limited to, the following:  Does Iowa have a bright-line rule that insurers and self-insured employers are the only entities that can be held liable for the tort of bad faith failure to pay workers' compensation benefits?  Are there entities other than a self-insured employer that are the substantial equivalent of or one and the same as insurers for purposes of the tort of bad faith failure to pay workers' compensation benefits?  Does Iowa law preclude the liability of third-party claims administrators on the tort of bad faith failure to pay workers' compensation benefits, without regard to their duties or relationship with the insurer, because they lack an insured-insurer relationship with the claimant?  Is there any need to recognize the tort of bad faith failure to pay workers' compensation benefits against third-party claims administrators, without regard to their duties or relationship with the insurer, because of the availability of the tort against the insurer?  The principal question, as I have formulated it, seems to me to encompasses all these subsidiary questions.[3]

------

[3] A related question is whether any rule that a third-party claims administrator can be held liable for the tort of bad faith failure to pay workers' compensation claims would extend beyond this context to other kinds of insurance.  I believe that question falls outside the scope of the present litigation, however.

Nevertheless, I believe that it is prudent to provide the parties with the opportunity to offer amendments to the question I propose or to offer different and additional questions that will lead to the authoritative and efficient disposition of De Dios's bad faith claim against Broadspire.

## III.    CONCLUSION

Upon the foregoing, I conclude that some form of the following question should be certified to the Iowa Supreme Court:  In what circumstances, if any, concerning a third-party claims administrator's duties and relationship with a workers' compensation insurer, can an injured employee hold the third-party claims administrator liable for the tort of bad faith for failure to pay workers' compensation benefits?  I will set a deadline for the parties to offer amendments to this question or to offer different and additional questions to be certified.  My determination that the key question animating Broadspire's Motion To Dismiss should be certified to the Iowa Supreme Court also leads to the conclusion that Broadspire's Motion To Dismiss should be denied without prejudice to reassertion, once the Iowa Supreme Court either declines to answer the certified question or questions or provides an answer or answers.

THEREFORE,

1.      Defendant Broadspire's April 3, 2018, Motion To Dismiss Plaintiff's Amended And Substituted Complaint For Failure To State A Claim (docket no. 17) is **denied,** *without prejudice* to reassertion upon notice from the Iowa Supreme Court that it declines to answer the certified question, as set out in paragraph 2, below, or any subsequently amended and/or different or additional certified questions, or provides an answer or answers;

2.      Pursuant to IOWA CODE § 684A.1 and N.D. IA. L.R. 83, I will certify to the Iowa Supreme Court the following question or amended and/or different or additional

questions: In what circumstances, if any, concerning a third-party claims administrator's duties and relationship with a workers' compensation insurer, can an injured employee hold the third-party claims administrator liable for the tort of bad faith for failure to pay workers' compensation benefits?

3. The parties shall have **to and including June 25, 2018,** to file proposed amendments to the question set out in paragraph 2 or different or additional questions they believe should be certified to the Iowa Supreme Court. The parties shall have **to and including July 2, 2018,** to file responses to the opposing parties' proposed amendments and/or different or additional questions.

**IT IS SO ORDERED**.

**DATED** this 13th day of June, 2018.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA