## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

| | | |
|---|---|---|
| SAMUEL DE DIOS, | ) | CASE NO. 5:18-cv-04015 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **SECOND** |
| vs. | ) | **AMENDED AND** |
| | ) | **SUBSTITUTED** |
| INDEMNITY INSURANCE COMPANY | ) | **COMPLAINT AND** |
| OF NORTH AMERICA, | ) | **JURY DEMAND** |
| BROADSPIRE SERVICES, INC., and | ) | |
| BRAND ENERGY & INFRASTRUCTURE | ) | |
| SERVICES, | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW Plaintiff Samuel De Dios, by and through his attorneys, Anthony J. Bribriesco of the BRIBRIESCO LAW FIRM, PLLC, and the AL STURGEON LAW OFFICE, for his Amended Complaint and Jury Demand states:

### PARTIES, VENUE & JURISDICTION

1.      At all times material to this Petition, Plaintiff Samuel de Dios (herein referred to as "SAMUEL") has been a resident of Woodbury County, Iowa.

2.      At all times material to this Petition, Brand Energy & Infrastructure Services had an insurance policy with Indemnity Insurance Company of North America. Plaintiff will refer to any employee or agent of Insurance Indemnity

1

Company of North America, as well as the corporate entity itself, as "the INSURANCE COMPANY."

3.     At all times material to SAMUEL's causes of actions, Brand Energy & Infrastructure Services contracted with the INSURANCE COMPANY to pay benefits pursuant to Iowa Code Chapters 85, 85A, 85B, 86, and 87 (herein referred to as "Iowa Workers' Compensation Laws"). Plaintiff will refer to Brand Energy & Infrastructure Services as "the EMPLOYER."

4.     At all times material to SAMUEL's causes of action, the INSURANCE COMPANY delegated its authority of investigating, handling, managing, administering, and paying benefits under Iowa Workers' Compensation Laws to Broadspire Services, Incorporated. Plaintiff will refer to this corporate entity as "BROADSPIRE."

5.     At all times material to the Petition, the INSURANCE COMPANY and BROADSPIRE were responsible for making timely payment of workers' compensation benefits to employees of the EMPLOYER, including SAMUEL. Plaintiff will refer to both the INSURANCE COMPANY and BROADSPIRE collectively as "the Defendants."

6.     BROADSPIRE and the INSURANCE COMPANY are essentially one and the same entity for purposes of the instant action.

2

7. The INSURANCE COMPANY lacked the necessary support staff to investigate on-the-job injuries in Iowa, including SAMUEL's on-the-job injury.

8. The INSURANCE COMPANY lacked the necessary support staff that had the experience or knowledge to make an informed decision on whether to pay benefits pursuant to Iowa Workers' Compensation Laws.

9. The INSURANCE COMPANY obligated BROADSPIRE to provide actuarial services for workers' compensation claims, including SAMUEL's workers' compensation claim.

10. The INSURANCE COMPANY obligated BROADSPIRE to provide underwriting services for workers' compensation claims, including SAMUEL's workers' compensation claim.

11. BROADSPIRE performed the tasks of a workers' compensation insurance company in Iowa.

12. BROADSPIRE received a percentage of the premiums that the EMPLOYER paid to the INSURANCE COMPANY.

13. BROADSPIRE's compensation package with the INSURANCE COMPANY was tied to the approval or denial of workers' compensation claims: BROADSPIRE received more of the EMPLOYER's premium as the payment of workers' compensation benefits decreased.

3

14.     BROADSPIRE had a financial risk of loss for workers' compensation claims it administered on behalf of the INSURANCE COMPANY, including SAMUEL's workers' compensation claim.

15.     The INSURANCE COMPANY had a financial risk of loss for workers' compensation claims that were administered by BROADSPIRE, including SAMUEL's workers' compensation claim.

16.     The INSURANCE COMPANY entered into a reinsurance agreement with BROADSPIRE for payments made on behalf on workers' compensation claims, including SAMUEL's workers' compensation claim.

17.     Employees of BROADSPIRE made the decision to deny SAMUEL workers' compensation benefits during the scope of their agency with the INSURANCE COMPANY.

18.     In the alternative, employees of the INSURANCE COMPANY made decisions to deny SAMUEL workers' compensation benefits.

19.     The amount in controversy exceeds this Court's jurisdictional requirement.

## COMMON ALLEGATIONS

20.     Plaintiff repleads paragraphs 1-19

21.     Before April 8, 2016, SAMUEL performed all the physical demands required by the EMPLOYER.

4

22.     As a part of his job responsibilities, SAMUEL was assigned to work on a construction site that was located on the private property of CF Industries. SAMUEL was required to drive past a security gate and security guard to in order to access this private property. Plaintiff will refer to the private property *past the security gate and security guard* as the "SITE."

23.     The EMPLOYER directed SAMUEL to the SITE when he reported to work on April 8, 2016.

24.     On April 8, 2016, SAMUEL was complying with instructions of the EMPLOYER when he was driving to the SITE.

25.     On April 8, 2016, Jonathan Elizondo crashed his vehicle into the back of SAMEUL's vehicle. Plaintiff will refer to this as the "Car Collision."

26.     The Car Collison occurred on the SITE.

27.     The impact of the Car Collision was so great that it broke the back window of SAMUEL's vehicle.

28.     The impact of the Car Collision was so great that it broke the driver's seat of SAMUEL's vehicle.

29.     Tina Gregg ("GREGG") was the security guard on the private property of CF Industries at the time of the Car Collision.

30.     GREGG witnessed that the Car Collision occurred on the SITE.

31.     Defendants knew or should have known that Gregg was a witness to Car Collision.

32.     Defendants had GREGG's contact information.

33.     Defendants never interviewed GREGG about the Car Collision before they decided to deny SAMUEL workers' compensation benefits.

34.     Defendants knew or should have known that they were required to interview GREGG about the Car Collision before making the decision to deny SAMUEL workers' compensation benefits.

35.     On April 8, 2016, SAMUEL sustained injuries that arose out of and in the course of his employment with the EMPLOYER. Plaintiff will refer to these injuries, including a lower back injury, collectively as "the WORK INJURY."

36.     On April 8, 2016, SAMUEL reported the WORK INJURY to the safety manager of the EMPLOYER, Ismael Barba.

37.     On April 8, 2016, Defendants knew about the WORK INJURY.

38.     On April 8, 2016, the EMPLOYER authorized SAMUEL to choose whatever medical provider he would like to provide care for the WORK INJURY.

39.     On April 8, 2016, SAMUEL chose to be seen at St. Luke's Hospital, which is located at 2720 Stone Park Boulevard in Sioux City, Iowa, for the WORK INJURY.

40.    On April 8, 2016, Dr. Jeffrey O'Tool provided medical care to SAMUEL for the WORK INJURY.

41.    Defendants never contacted Dr. Jeffrey O'Tool before it made the decision to deny SAMUEL workers' compensation benefits.

42.    Defendants never reviewed medical records from St. Luke's Hospital before they made the decision to deny SAMUEL workers' compensation benefits.

43.    On April 8, 2016, Defendants knew or should have known that that they were required to pay SAMUEL medical benefits relating to the WORK INJURY, including the medical expenses from St. Luke's Hospital.

44.    On April 11, 20016, SAMUEL returned to work with the EMPLOYER and he began experiencing a worsening of back pain from the WORK INJURY.

45.    On April 14, 20016, the EMPLOYER sent SAMUEL home because of the WORK INJURY.

46.    On April 14, 2016, the EMPLOYER authorized SAMUEL to choose whatever medical provider he would like to see to care for the WORK INJURY.

47.    From April 8, 2016 through April 15, 2016, Defendants never attempted to contact SAMUEL regarding the WORK INJURY.

48.    On April 15, 2016, SAMUEL chose to see his family doctor, Alisa M. Olson, DO, for treatment of the WORK INJURY.

49.    From April 15, 2016 through May 9, 2016, Dr. Olson restricted SAMUEL from performing work activities as a result of the WORK INJURY.

50.    Defendants never contacted Dr. Olson before it made the decision to deny SAMUEL workers' compensation benefits.

51.    Defendants never reviewed medical records from Dr. Olson before it made the decision to deny SAMUEL workers' compensation benefits.

52.    From April 8, 2016 through May 9, 2016, the EMPLOYER refused to provide "light duty" work to SAMUEL.

53.    On April 15, 2016, Defendants knew or should have known that SAMUEL had work restrictions as a result of the WORK INJURY.

54.    On April 15, 2016, Defendants knew or should have known that the EMPLOYER refused to provide "light duty work" within these restrictions.

55.    On April 15, 2016, Defendants knew or should have known that that they were required to pay SAMUEL Temporary Total Disability ("TTD") Benefits and/or Healing Period ("HP") Benefits until a determination of maximum medical improvement was made by a qualified, medical expert.

56.    From April 15, 2016 through June 9, 2016, Defendants never attempted to contact SAMUEL.

57. Defendants knew or should have known that they were required to interview SAMUEL regarding the Car Collision and the WORK INJURY within thirty (30) days of the Car Collision/WORK INJURY, i.e., before May 8, 2017.

58. Defendants had a responsibility to follow the insurance industry standard of "Three-Point Contact" before denying SAMUEL workers' compensation benefits.

59. Defendant violated the insurance industry standard of "Three Point Contact."

60. On June 9, 2016, SAMUEL was forced to file a workers' compensation claim against Defendants because of their choice to deny workers' compensation benefits. Plaintiff will refer to this claim as "the Workers' Compensation Claim."

61. Iowa Code section 86.13(4) requires that Defendants conduct a reasonable investigation before denying SAMUEL workers' compensation benefits.

62. In the case of *Jenson v. Cummins Filtration-Lake Mills*, the Iowa Workers' Compensation Commissioner clearly mandated that workers' compensation insurance companies have an affirmative duty to conduct a reasonable evaluation of the claim, even in the absence of a causation opinion in favor of the claimant. Plaintiff has attached a copy of *Jenson v. Cummins Filtration-Lake Mills,* File Nos. 5032401-5032402 (App. Dec., September 25, 2012) as "Petitioner's Exhibit 1".

9

63.     The Iowa Supreme Court has clearly ruled that: a workers'
compensation insurance company has an affirmative duty to act reasonably even in
the absence of specific direction by the Iowa Workers' Compensation
Commissioner. *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 397 (Iowa 2001)
(quoting *Boylan v. Am. Motorist Ins. Co*., 489 N.W.2d 743, 743 (Iowa 1992)).

64.     Pursuant to their policies and procedures, Defendants were required to
conduct a reasonable investigation before denying SAMUEL workers'
compensation benefits.

65.     Iowa Code section 86.13(4) required that Defendants conduct a
reasonable evaluation regarding the compensability of the WORK INJURY before
denying SAMUEL workers' compensation benefits.

66.     In *Boylan v. Am. Motorist Ins. Co*., 489 N.W.2d 743 (Iowa 1992), the
Iowa Supreme Court established that a workers' compensation insurance company
has a duty to conduct a reasonable evaluation regarding the compensability of an
alleged work injury before denying workers' compensation benefits.

67.     Pursuant to their policies and procedures, Defendants were required to
conduct a reasonable evaluation before denying SAMUEL workers' compensation
benefits.

10

68.     On August 23, 2016, Defendants filed an Answer with the Iowa Workers' Compensation Commissioner and denied liability for the WORK INJURY. Plaintiff has attached the Answer as "Petitioner's Exhibit 2".

69.     Iowa Code section 86.13(4) requires that Defendants convey their actual basis for denying workers' compensation benefits to SAMUEL contemporaneously at the time of the denial.

70.     On August 23, 2016, Defendants did not convey to SAMUEL the basis for its decision to deny the claim.

71.     On August 23, 2016, Defendants violated Iowa Code section 86.13(4).

72.     On August 23, 2016, Defendants represented to the Iowa Workers' Compensation Agency that the correct insurance carrier was "Indemnity Insurance Company of North America."

73.     On or about February 13, 2017, Defendants had the Affidavit of GREGG in their possession or under their control. Plaintiff has attached this Affidavit as "Petitioner's Exhibit 3".

74.     In her Affidavit, GREGG states that the Car Collision "occurred about 75-100 yards *inside* the gate shack." (Pet. Ex. 3, emphasis added)

75.     In her Affidavit, GREGG states the following: "once an individual is at the guard shack they clearly *within the property of CF Industries and the project*." (Pet. Ex. 3, emphasis added)

76.     After receiving the Affidavit of GREGG, Defendants had a responsibility to review or reevaluate its decision to deny SAMUEL workers' compensation benefits. *Squealer Fees v. Pickering*, 530 N.W.2d 678, 683 (Iowa 1995); *McIlravy v. North River Ins. Co.*, 653 N.W.2d 323, (Iowa 2002).

77.     After receiving the Affidavit of GREGG, Defendants knew or should have known that they were required review or reevaluate its decision to deny SAMUEL workers' compensation benefits.

78.     After receiving the Affidavit of GREGG, Defendants did not review or reevaluate its decision to deny SAMUEL workers' compensation benefits.

79.     On July 12, 2017 Deputy Workers' Compensation Commissioner William Grell presided over the Arbitration Hearing in the Workers' Compensation Claim. Plaintiff will refer to the Deputy as "the Judge."

80.     On December 11, 2017, the Judge filed the arbitration decision for the Workers' Compensation Claim. Plaintiff will refer to this as "the Decision."

81.     In the Decision, the Judge wrote the following:

…*It is clear* in this record that the accident on April 8, 2016 occurred inside a fenced and guarded area. *It is equally clear* that claimant was instructed in which specific area he was to park when reporting for work and that Mr. De Dios was complying with those instructions when the accident occurred…*There is no doubt in this record* that the motor vehicle accident occurring on April 8, 2016 occurred after Mr. De Dios passed the initial guard shack and was proceeding down a dirt road established and dedicated for use by employees of contractors, such as Mr. De Dios…

12

(Decision, File No. 5061144, page 3, emphasis added)

82.     The Iowa Workers' Compensation Agency has already decided that the WORK INJURY arose out of and in the course of SAMUEL's employment.

83.     On February 27, 2018, Defendants voluntarily made payment of TTD Benefits and/or HP Benefits because they knew that they had denied the payment of weekly benefits in bad faith.

84.     On March 14, 2018, Defendants offered SAMUEL $42,338.50 to settle the Workers' Compensation Claim when Defendants actually valued the Workers' Compensation Claim over $500,000.00.

85.     Defendants authorized, approved, and ratified the willful and wanton actions of its employees and agents to deny workers' compensation benefits in bad faith so as to entitle Plaintiff to punitive and/or exemplary damages.

## COUNT I - BAD FAITH AGAINST THE INSURANCE COMPANY

86.     Plaintiff repleads Paragraphs 1 – 85 as though fully and completely set forth in this Count I.

87.     The INSURANCE COMPANY had an affirmative duty to conduct a reasonable investigation *before* it was allowed to decide whether or not to deny SAMUEL workers' compensation benefits, which included the following affirmative duties:

13

A.   The INSURANCE COMPANY had a duty to interview the witnesses to the Car Collision.

B.   The INSURANCE COMPANY had to a duty to have a qualified, medical expert review SAMUEL's medical records.

C.   The INSURANCE COMPANY had a duty to send SAMUEL for an independent medical examination.

D.   The INSURANCE COMPANY had a duty to communicate with SAMUEL's treating physicians.

E.   The INSURANCE COMPANY had a duty to follow the insurance industry standard of three-point contact.

F.   The INSURANCE COMPANY had a duty to memorialize its investigation.

88.   The INSURANCE COMPANY violated its affirmative duty to conduct a reasonable investigation before it decided to deny SAMUEL workers' compensation benefits.

89.   THE INSURANCE COMPANY's investigation - or lack of investigation - goes to "the very foundation of the basis for its denial." *See McIlravy v. North River Ins. Co.*, 653 N.W.2d 323 (Iowa 2002).

90.   The INSURANCE COMPANY had an affirmative duty to conduct a reasonable evaluation before it was allowed to deny workers' compensation benefits.

14

91.     The INSURANCE COMPANY violated its duty to conduct a reasonable evaluation *before* it decided to deny SAMUEL workers' compensation benefits and violated this duty when:

> A.     The INSURANCE COMPANY made an uniformed decision.
>
> B.     The INSURANCE COMPANY made a decision based on financial motivation. and
>
> C.     The INSURANCE COMPANY ignored Iowa law on the well-established exceptions to the so-called "going and coming" rule such as the "zone of protection" exception.

92.     The INSURANCE COMPANY had an affirmative duty to reevaluate its denial after receiving additional information.

93.     The INSURANCE COMPANY violated its duty to reevaluate its denial after receiving additional information regarding the WORK INJURY.

94.     The INSURANCE COMPANY had no reasonable basis to deny SAMUEL workers' compensation benefits.

95.     The INSURANCE COMPANY knew or should have known that no reasonable basis existed to support its decision to deny SAMUEL payment of workers' compensation benefits.

96.     The INSURANCE COMPANY relied on advice of counsel when it chose to deny SAMUEL workers' compensation benefits.

97.     As a result of THE INSURANCE COMPANY's actions, SAMUEL has sustained harms and losses as follows:

> A.     past and future medical expenses;
>
> B.     past and future pain and suffering, including mental anguish;
>
> C.     past and future loss of full body;
>
> D.     past lost wages and loss of future earning capacity;
>
> E.     consequential damages and other pecuniary losses; and
>
> F.     loss of property.

98.     The actions and conduct of the INSURANCE COMPANY were willful and wanton so as to entitle Plaintiff to punitive damages.

WHEREFORE Plaintiff prays for judgment for compensatory damages against the INSURANCE COMPANY, in a fair and reasonable amount, and punitive damages together with interest thereon as provided by law and the costs of this action.

## COUNT II - BAD FAITH AGAINST BROADSPIRE

99.     Plaintiff repleads Paragraphs 1 – 98 as though fully and completely set forth in this Count II.

100.    BROADSPIRE had an affirmative duty to conduct a reasonable investigation *before* it was allowed to decide whether or not to deny SAMUEL workers' compensation benefits, which included the following affirmative duties:

16

A.      BROADSPIRE had a duty to interview the witnesses to the Car Collision.

B.      BROADSPIRE had to a duty to have a qualified, medical expert review SAMUEL's medical records.

C.      BROADSPIRE had a duty to send SAMUEL for an independent medical examination.

D.      BROADSPIRE had a duty to communicate SAMUEL's treating physicians.

E.      BROADSPIRE had a duty to follow the insurance industry standard of three-point contact.

F.      BROADSPIRE had a duty to memorialize its investigation.

101.   BROADSPIRE violated its affirmative duty to conduct a reasonable investigation before it decided to deny SAMUEL workers' compensation benefits.

102.   BROADSPIRE's investigation - or lack of investigation - goes to "the very foundation of the basis for its denial." *See McIlravy v. North River Ins. Co.*, 653 N.W.2d 323 (Iowa 2002).

103.   BROADSPIRE had an affirmative duty to conduct a reasonable evaluation before it was allowed to deny workers' compensation benefits.

104. BROADSPIRE violated its duty to conduct a reasonable evaluation *before* it decided to deny SAMUEL workers' compensation benefits and violated this duty when:

    A.    BROADSPIRE made an uniformed decision.

    B.    BROADSPIRE made a decision based on financial motivation.

    C.    BROADSPIRE ignored Iowa law on the well-established exceptions to the so-called "going and coming" rule such as the "zone of protection" exception to that rule.

105. BROADSPIRE had an affirmative duty to reevaluate its denial after receiving additional information.

106. BROADSPIRE violated its duty to reevaluate its denial after receiving additional information regarding the WORK INJURY.

107. BROADSPIRE had no reasonable basis to deny SAMUEL workers' compensation benefits.

108. BROADSPIRE knew or should have known that no reasonable basis existed to support its decision to deny SAMUEL payment of workers' compensation benefits.

109. BROADSPIRE relied on advice of counsel when it chose to deny SAMUEL workers' compensation benefits.

110. As a result of BROADSPIRE's actions, SAMUEL has sustained harms and losses as follows:

    A.    past and future medical expenses;

    B.    past and future pain and suffering, including mental anguish;

    C.    past and future loss of full body;

    D.    past lost wages and loss of future earning capacity;

    E.    consequential damages and other pecuniary losses; and

    F.    loss of property.

111. The actions and conduct of BROADSPIRE were willful and wanton so as to entitle Plaintiff to punitive damages.

WHEREFORE Plaintiff prays for judgment for compensatory damages against BROADSPIRE, in a fair and reasonable amount, and punitive damages together with interest thereon as provided by law and the costs of this action.

## COUNT III – VICARIOUS LIABILITY OF THE INSURANCE COMPANY

112. SAMUEL repleads Paragraphs 1 – 111 as though fully and completely set forth in this Count III.

113. At all times material to Plaintiff's causes of action, BROADSPIRE was an agent of the INSURANCE COMPANY.

114. The INSURANCE COMPANY is liable for the actions and conduct of BROADSPIRE's bad faith denial of workers' compensation benefits.

19

115. As a result of Defendants' actions, SAMUEL has sustained harms and losses as follows:

    A.     past and future medical expenses;

    B.     past and future pain and suffering, including mental anguish;

    C.     past and future loss of full body;

    D.     past lost wages and loss of future earning capacity;

    E.     consequential damages and other pecuniary losses; and

    F.     loss of property.

116. The actions and conduct of BROADSPIRE were willful and wanton so as to entitle SAMUEL to punitive and/or exemplary damages.

117. The INSURNACE COMPANY authorized, approved, and/or ratified BROADSPIRE's decision to deny and/or delay SAMUEL workers' compensation benefits in bad faith.

WHEREFORE Plaintiff prays for judgment for compensatory damages against Defendants, in a fair and reasonable amount, and punitive and exemplary damages together with interest thereon as provided by law, plus the costs of this action.

## COUNT IV – BAD FAITH AGAINST EMPLOYER

118. In the alternative, the EMPLOYER was a self-insured employer for purposes of the Iowa Workers' Compensation Laws.

20

119. The EMPLOYER had a duty to act in good faith toward SAMUEL regarding its investigation and evaluation of the CAR COLLISION.

120. The EMPLOYER had an affirmative duty to conduct a reasonable investigation *before* it was allowed to decide whether or not to deny SAMUEL workers' compensation benefits, which included the following affirmative duties:

A. The EMPLOYER had a duty to interview the witnesses to the Car Collision.

B. The EMPLOYER had to a duty to have a qualified, medical expert review SAMUEL's medical records.

C. The EMPLOYER had a duty to send SAMUEL for an independent medical examination.

D. The EMPLOYER had a duty to communicate with SAMUEL's treating physicians.

E. The EMPLOYER had a duty to follow the insurance industry standard of three-point contact.

F. The EMPLOYER had a duty to memorialize its investigation.

121. The EMPLOYER violated its affirmative duty to conduct a reasonable investigation before it decided to deny SAMUEL workers' compensation benefits.

122.   The EMPLOYER's investigation - or lack of investigation - goes to "the very foundation of the basis for its denial." *See McIlravy v. North River Ins. Co.*, 653 N.W.2d 323 (Iowa 2002).

123.   The EMPLOYER had an affirmative duty to conduct a reasonable evaluation before it was allowed to deny workers' compensation benefits.

124.   The EMPLOYER violated its duty to conduct a reasonable evaluation *before* it decided to deny SAMUEL workers' compensation benefits and violated this duty when:

   A.   The EMPLOYER made an uniformed decision.

   B.   The EMPLOYER made a decision based on financial motivation.

   C.   The EMPLOYER ignored Iowa law on the well-established exceptions to the so-called "going and coming" rule such as the "zone of protection" exception.

125.   The EMPLOYER had an affirmative duty to reevaluate its denial after receiving additional information.

126.   The EMPLOYER violated its duty to reevaluate its denial after receiving additional information regarding the WORK INJURY.

127.   The EMPLOYER had no reasonable basis to deny SAMUEL workers' compensation benefits.

128. The EMPLOYER knew or should have known that no reasonable basis existed to support its decision to deny SAMUEL payment of workers' compensation benefits.

129. The EMPLOYER relied on advice of counsel when it chose to deny SAMUEL workers' compensation benefits.

130. As a result of the EMPLOYER's actions, SAMUEL has sustained harms and losses as follows:

     A.    past and future medical expenses;

     B.    past and future pain and suffering, including mental anguish;

     C.    past and future loss of full body;

     D.    past lost wages and loss of future earning capacity;

     E.    consequential damages and other pecuniary losses; and

     F.    loss of property.

131. The actions and conduct of the EMPLOYER were willful and wanton so as to entitle SAMUEL to punitive and/or exemplary damages.

132. The EMPLOYER authorized, approved, and/or ratified BROADSPIRE's decision to deny and/or delay SAMUEL workers' compensation benefits in bad faith.

WHEREFORE Plaintiff prays for judgment for compensatory damages against the EMPLOYER, in a fair and reasonable amount, and punitive and

exemplary damages together with interest thereon as provided by law, plus the costs

of this action.

By:    _/s/ Anthony J. Bribriesco____
       Anthony J. Bribriesco AT0010242
       BRIBRIESCO LAW FIRM, PLLC
       2407 18th Street, Suite 200
       Bettendorf, IA 52722
       Phone: 563/359-8266
       Fax: 563/359-5010
       Emails:   Anthony@Bribriescolawfirm.com

By:    _/s/ Al Sturgeon_____
       Al Sturgeon AT0007636
       AL STURGEON LAW OFFICE
       911 – 6th ST.
       Sioux City, IA 51101
       Phone: 712/234-1440
       Email:  alsturgeon@siouxlan.net

       **ATTORNEYS FOR PLAINTIFF**

24

## JURY DEMAND

COMES NOW Plaintiff, by and through his attorneys, Anthony J. Bribriesco

of the BRIBRIESCO LAW FIRM, PLLC, and the AL STURGEON LAW OFFICE,

and hereby demands a trial by jury on all issues so triable in the above captioned

matter.


By:     /s/ Anthony J. Bribriesco
        Anthony J. Bribriesco AT0010242
        BRIBRIESCO LAW FIRM, PLLC
        2407 18th Street, Suite 200
        Bettendorf, IA 52722
        Phone: 563/359-8266
        Fax: 563/359-5010
        Emails:  Anthony@Bribriescolawfirm.com


By:     /s/ Al Sturgeon
        Al Sturgeon AT0007636
        AL STURGEON LAW OFFICE
        911 – 6th ST.
        Sioux City, IA 51101
        Phone: 712/234-1440
        Email:  alsturgeon@siouxlan.net


**ATTORNEYS FOR PLAINTIFF**